**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

July 13, 2012,

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: /s/Nelson DosSantos, Deputy

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                            :
IN RE:                                      :
                                            :     CHAPTER 11
EINSTEIN MOOMJY, Inc.,                       :
                                            :
                  Debtor.     :
_____     :     CASE NO.: 11-34723 (NLW)


**OPINION**

**Before:**      **HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Daniel Stoltz, Esq.
Leonard C. Walczyk, Esq.
Wasserman, Jurista, & Stolz, P.C.
225 Millburn Avenue, Suite 207
Millburn, New Jersey 07041
Attorneys for Debtor

Richard Ravin, Esq.
Hartman & Winnicki, P.C.
West 115 Century Road, Suite 120
Paramus, New Jersey 07652
Attorneys for Emil Buehler Trust

This matter is brought before the court by the debtor on a motion objecting to the claim of its landlord, which asserts claims for both the pre-petition and post-petition periods.  The thrust of the Debtor's objection is that the claim is incorrectly calculated.  The landlord rejects the Debtor's proposed amendments to its calculations.

This court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2), (B) and (E).

## STATEMENT OF FACTS & PROCEDURAL HISTORY

**I.**     **Pre-Petition History: The Modified Lease and Settlement Agreements**

On August 19, 2011 ("Petition Date"), Einstein Moomjy, Inc. ("Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and has continued in possession of its property and management of its affairs as a debtor-in-possession.  An Official Committee of Unsecured Creditors ("Creditors' Committee") was appointed by the United States Trustee in September 2011.  Although an active participant in the case, the Creditors' Committee has not taken a position on the dispute presently before the court.

In the matter at hand, the Debtor objects to the proof of claim filed by its landlord, the Emil Buehler Trust ("EBT") and that is comprised of a pre-petition claim in the amount of $2,114,181.09 and an administrative expense claim of $104,054.83.  Much of the basis for the objection arises out of the litigation regarding the leasehold and settlement of that litigation.  Accordingly a review of that history is essential in order to address the Debtor's objection.

2

On October 9, 1995, EBT and Debtor entered into a lease for the premises located at 289-295 Route 17 South, Paramus, New Jersey ("Rear Store").  (Declaration of Erika Butler ("Butler Decl."), Ex. A)  The lease provided for a ten-year term commencing on August 15, 1996 with an option to renew.  (Declaration of Richard Ravin ("Ravin Decl."), Ex. A)  Before the term expired, on October 16, 2000, Debtor and EBT modified the renewal terms for the Rear Store and also provided for the Debtor to lease premises located at 305 Route 17 South, Paramus, New Jersey ("Front Store") through February 15, 2012 ("Modified Lease").  (Butler Decl., Ex. B)  The Debtor exercised its option to renew the Rear Store lease for a term that expired August 14, 2011. (Ravin Decl., Ex. B)

Pursuant to the Modified Lease, the Debtor was obligated to pay fixed rent and additional rent for both properties. The additional rent included the Debtor's share of the common-area maintenance expenses, real estate taxes, and insurance.  The fixed monthly rent for the Front Store was $44,329.85, and the average monthly additional rent for the nine months leading up to the petition date was $10,917.54.  (Butler Decl., Ex. F)  Thus, the total monthly rent for the Front Store approximated $55,247.39.  The record with respect to the monthly rent for the Rear Store is unclear, as the EBT proof of claim does not specify clearly the monthly obligations.

At some point the Debtor ceased making timely lease payments to EBT.  As a result, on February 25, 2009, EBT commenced a summary dispossess action against the Debtor in Landlord/Tenant Court ("Dispossess Action One"), which was ultimately dismissed pursuant to a forbearance agreement dated March 18, 2009 ("Forbearance Agreement").   Under the Forbearance Agreement, the parties agreed to a payment schedule for rent arrears totaling $388,077.72.  Pursuant to the Forbearance Agreement, Debtor made an initial $200,846.49 payment to EBT.  The Debtor, however, failed to pay the remaining installments, totaling

3

$187,231.23.[1]   Around the same time, Debtor defaulted under the Modified Lease again.

According to EBT, by mid-September 2010 Debtor's arrears totaled $600,000. (Butler Decl., Ex.

E)

On September 17, 2010, EBT filed another eviction action against Debtor in

Landlord/Tenant Court ("Dispossess Action Two").  Debtor failed to appear this time and default

was entered against it on November 29, 2010.  (Ravin Decl., Ex. C)  Prior to an entry of default

judgment, the Debtor and EBT attempted to negotiate a settlement, under which the Debtor

would avoid eviction.  It appears that as part of the negotiations EBT agreed to forebear evicting

the Debtor in exchange for the Debtor's payment of $10,000 by November 29, 2010 and $40,000

by December 10, 2010.  The Debtor made these payments.  EBT's counsel memorialized the

terms of the settlement in a stipulation of settlement and forwarded it to the Debtor on March 15,

2011 ("Stipulation") together with a cover letter, explaining that the purpose of the Stipulation

was to memorialize the agreement of the parties.  Specifically, the cover letter stated that

> [T]his document will be filed with the Court so that the Court is aware why the
> Trust has not gone ahead with the eviction proceedings.  Please review the
> Stipulation and contact me if you have any questions or comments.  If the
> language is acceptable, please sign it and return it to me in the enclosed envelope.

(Debtor's Objection to Claim ("Debtor's Objection"), Ex. B).

The Stipulation recited the following: (i) as of December 31, 2010 the Debtor owed EBT

$1,124,427.19, (ii) the combined monthly rent for both stores equals $105,238.77, plus

additional rent, (iii) default was entered against the Debtor in Dispossess Action Two, and (iv)

EBT agreed to forebear from proceeding with eviction in exchange for payments received from

the Debtor totaling $50,000.  (Debtor's Objection, Ex. C.)  Based on these foundational facts the

---

[1] Debtor was to pay the remaining $187,231.23 was to be paid in fifteen equal installments, commencing on
September 10, 2009 and accruing interest at the rate of five percent per annum.  According to EBT's proof of claim,
as of the petition date the arrears under the Forbearance Agreement were $210,992.05.

4

Stipulation further provided that (i) the Debtor would vacate the Rear Store by February 28, 2011, (ii) the Debtor would cease selling merchandise from the Rear Store by January 15, 2011, but continue to pay for utilities and fire protection through February 28, 2011, (iii) with regard to the Front Store beginning January 1, 2011 and continuing until lease expiration the Debtor would pay $33,725 per month by the first of each month, and (iv) in return for these monthly payments EBT agreed not to continue the eviction as to the Front Store. (*Id.*)

The terms of the Stipulation were not solely favorable to the Debtor as several paragraphs reserved important rights to EBT, including (i) reserving EBT's right to fully enforce all obligations under the initial lease, the Modified Lease and the Stipulation, (ii) preserving EBT's right to evict the Debtor in the event of default, (iii) specifying that all provisions of the initial lease, the Modified Lease and the Stipulation remained in full force and effect, and (iv) providing for EBT's right to obtain payment of all costs and expenses in any proceeding to enforce the Stipulation. (*Id.*)

The Debtor never signed and returned the Stipulation to EBT.  The Debtor did, however, partially perform under the Stipulation.  The Debtor made the $10,000 and $40,000 payments to EBT by November 29, 2010 and December 10, 2010, respectively.  The Debtor also vacated the Rear Store by February 28, 2011.  The Debtor made the $33,725 rent payments for the Front Store up to and including the April 1, 2011 payment.  Thereafter, Debtor made only a single $5,000 payment on June 7, 2011.  Debtor otherwise failed to make payments to EBT from May 1, 2011 to August 1, 2011, resulting in a deficiency pursuant to the terms of the Settlement in the amount of $129,000.

The EBT proof of claim calculated the pre-petition rent due for the Rear Store and the Front Store by reference to the rent terms of the lease and the Modified Lease.  For example,

although both parties agree that the Debtor vacated the Rear Store premises on or about February 28, 2011, EBT calculates the fixed rent due per the lease agreements as covering the period May 1, 2010 through August 1, 2011 and the additional rent due as encompassing the time period December 15, 2010 through July 18, 2011.  The Debtor objects, stating that its return of the Rear Store to EBT pursuant to the Stipulation constituted a surrender of the property by Debtor, and that no rent can be due for the Rear Store after February 2011. EBT denies that surrender of the Rear Store occurred and points to provisions in the Modified Lease under which rent accrues until expiration of the lease term.

The Debtor supports its claim that the Rear Store was surrendered in a certification jointly executed by Walter Moomjy, Andrea Moomjy, and Claudia Moomjy ("Moomjy Certification").  The Debtor contends in the Moomjy Certification that in November of 2010, Darius Winnicki, attorney for EBT, advised the Moomjys that "there was no way [they] would be allowed to stay."  (*See* Moomjy Certification, ¶ 2)  On January 3, 2011, Erika Butler, EBT's property manager, sent the Debtor a proposed stipulation in connection with Dispossess Action Two whereby the Debtor was to vacate the Rear Store by January 15, 2011.  On January 12, 2011, the Debtor contacted Ms. Butler, seeking additional time to vacate the Rear Store.  Ms. Butler responded by email on the same date clarifying that (1) there would be no further sales from the Rear Store after January 15, 2011, (2) the Debtor would provide EBT with a detailed plan to ensure the Rear Store would be broom clean by January 31, 2011, (3) Ms. Butler would be permitted to make daily visits to monitor the Debtor's progress, and (4) the Debtor would be responsible for paying utilities and fire protection during its occupancy.  (Many of these provisions were included in the Stipulation.) The Debtor contends that by no later than February 15, 2011 it completely vacated the Rear Store to the satisfaction of EBT.  Further, the Moomjy

6

Cert. states that, on February 28, 2011, EBT changed the locks on the Rear Store. Other than

contending that the Debtor did not meet its burden of proof, EBT does not set forth additional

facts to instruct the court regarding the surrender of the Rear Store.

The Debtor and EBT also disagree as to the prepetition rent due for the Front Store. The

Debtor claims that the Stipulation supersedes the Modified Lease. The Debtor thus asserts that

the post-Stipulation fixed rent and additional rent were fixed at $33,725 per month. (Moomjy

Cert. ¶ 14) EBT disputes that the Stipulation is in effect, noting that the Debtor never executed

and returned the document to EBT. Further, although EBT concedes that the unsigned

Stipulation fixed the Front Store rent, it points out that under the Stipulation EBT reserved all of

its rights under the lease and Modified Lease. EBT points specifically to the following

provisions:

> 4. The failure of Defendant Moomjy to make any payment required by this
> Stipulation in a timely fashion shall constitute an event of default.
> …
> 6. Plaintiff Trust [EBT] may fully, completely and strictly enforce all
> obligations under both the Leases and this Stipulation and it is further understood
> by the parties that time is of the essence with respect to all payments due under
> the Leases and this Stipulation.
> …
> 8. Plaintiff Trust [EBT] reserves all of its rights under the Leases,
> including the right to pursue a money judgment for all arrears due under those
> Agreements.
> …
> 9. Except for the limited restriction on Plaintiff Trust's [EBT's] rights to
> proceed with the eviction of Defendant Moomjy at this time, any and all
> provisions of the Leases, including but not limited to Defendant Moomjy's
> obligations to make its Minimum Annual Rent and the Additional Rent for the
> Front and Back [Rear] Stores as those terms are defined by the Leases, remain in
> full force and effect.

(Stipulation, at ¶¶ 4,6,8,9)

## II.    Postpetition History: The Settlement and the Going Out of Business Sale

EBT breaks down its claim for postpetition rent into two parts – stub rent and shortfall rent. First it asserts a claim for rent for the Front Store for the time period August 19 through 31, 2011 ("Stub Rent").[2] Second, it seeks payment of the rent for the Front Store that represents the difference between what EBT received for use of the Front Store during the Debtor's Going Out of Business Sale ("GOB Sale") conducted by Planned Furniture Promotions ("PFP"), and the rent due under the Modified Lease ("Shortfall Rent").

### A.    Stub Rent

EBT calculates the Stub Rent due for the Front Store by multiplying the monthly fixed rent ($44,329.85) and the monthly additional rent ($10,170.13), as both are defined in the Modified Lease, by 13/31 to arrive at the sum of $22,854.83 as postpetition rent due for the balance of August 2011. The Debtor argues first that under the Third Circuit decision in *In re Montgomery Ward Holding Corp.*, 268 F.3d 205 (3d (Cir. 2001) no rent is due for the balance of August 2011. Second, if this court finds that the Debtor owes postpetition rent for the balance of August 2011, the Stub Rent is calculated based on the value of the Debtor's use and, thus, occupancy of the premises and not on the terms of the Modified Lease. The Debtor asserts that the monthly use and occupancy should be $33,7000 and the Stub Rent owed for 12 days amounts to $13,045.16. EBT and Debtor disagree over how many days are included in the Stub Rent period. EBT calculates the rent using thirteen days. Debtor calculates the rent using twelve days. The parties do not address this discrepancy in their respective briefs. The court finds that the date on which the case was commenced must be counted as part of the postpetition period. As a result, thirteen days is the appropriate period for calculating Stub Rent.

---

[2] The Third Circuit defines Stub Rent as, "the amount due a landlord for the period of occupancy and use between the petition date and the first post-petition rent payment." *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 815 (3d Cir. 2010).

### B.    Shortfall Rent

EBT acknowledges that in connection with the Debtor's GOB Sale it agreed that for the

period September through December 2011 it would accept monthly payments from PFP of

$33,700 as rent/use and occupancy for the Front Store, and EBT acknowledges that it received

payments from PFP totaling $134,800.  EBT also points out, however, that it reserved its right to

seek the full amount of fixed rent and additional rent for September through December 2011 as

provided in the Modified Lease.  EBT calculates that under the Modified Lease the total fixed

and additional rent amounted to approximately $220,000, and that since it received only

$134,800 from PFP, the Debtor Shortfall Rent of $85,200.00.

The Debtor objects to the Shortfall Rent claimed by EBT on the basis that EBT is merely

entitled to an administrative claim for the Debtor's reasonable use and occupancy of the premises

during the postpetition period.  Further, the Debtor asserts that the $33,700 per month established

by the prepetition Stipulation establishes the reasonable monthly use and occupation for the

Front Store.

### DISCUSSION

### I.    Effect of the Stipulation on the Prepetition Claim

EBT and Debtor disagree on the interpretation of the Stipulation and whether it is a valid,

enforceable contract between Debtor and EBT. The Debtor argues that the Stipulation amended

the Modified Lease and set a new rent obligation for the Front Store.  EBT initially argues that

the Stipulation is not binding on the parties, because the Debtor failed to sign and return the

Stipulation to EBT.  In the alternative, EBT argues that the Stipulation set only a minimum rent

obligation that prevented the Debtor's eviction and did not modify Debtor's obligation to pay the full rent as set forth under the Modified Lease.  Since the court finds that the Stipulation, if valid and enforceable, does not alter the terms of the Modified Lease that are relevant here, the court need not address EBT's argument that the Stipulation is not binding on the parties.

Under New Jersey law, a contract does not "come into being unless there is a manifestation of mutual assent by the parties to the same terms."  *Johnson & Johnson v. Charmley Drug Co.*, 11 N.J. 526. 538 (1953).  In other words, there must be a meeting of the minds.   In *Bayside Chrysler Plymouth Jeep Eagle, Inc. v. Ma*, the court stated that as "a general proposition, the essentials of a valid contract are mutual assent, consideration, legality of object, capacity of the parties and formality of memorialization."  No. DC-9699-02, 2006 WL 1449783, *6 (N.J. App. Div. 2006)(citing *Cohn v. Fisher*, 118 N.J.Super. 286, 291 (Law Div. 1972)).   If these factors are met, a valid contract arises.

Pursuant to the express terms of the Modified Lease, the Modified Lease could not be amended except by a written instrument signed by both parties.  Here, EBT forwarded the Stipulation to the Debtor with express instructions for Debtor to sign and return the executed document to allow EBT to file a copy of the same in Dispossess Action Two.  For reasons not disclosed to the court, the Debtor never signed the Stipulation.  The Debtor did, however, make two lump-sum payments as well as rent payments of $33,725 a month from January 1 to April 1, 2011 as set forth in the Stipulation.  EBT accepted these payments and did not commence another eviction action as agreed in the Stipulation.  Thus, arguably both parties acted as if they were bound by the terms of the Stipulation, and mutual assent might reasonably be inferred.

The Debtor relies on the terms of the Stipulation for its claim that the fixed rent for the Front Store was effectively reduced.  In fact, the principals state in the Moomjy Certification that

they understood the Stipulation to have changed the fixed rent for the Front Store from

$44.329.85 a month as set forth in the Modified Lease to $33,725 per month.  The court finds

that this certification can be given little weight.  First, it is impossible to determine which of the

three parties certifying for the Debtor actually engaged in the negotiations and with whom on

behalf of EBT.  Second, the language of the Stipulation and the circumstances in which it was

drafted belie the interpretation of the document urged by the Debtor.

In *Conway v. 287 Corporate Ctr., Assocs.*, the New Jersey Supreme Court repeated its

view that evidence of the circumstances in which an agreement was created is always admissible

as an aid to interpretation.  187 N.J. 259, 269 (2006)(citing *Atl. N. Airlines v. Schwimmer*, 12

N.J. 293, 301 (1953)).  It further stated,

> The polestar of construction is the intention of the parties to the contract as
> revealed by the language used, taken in its entirety; and in the quest for the
> intention, the situation of the parties, the attendant circumstances, and the objects
> they were thereby striving to attain are necessarily to be regarded."

*Id*.

The Stipulation arose out of Dispossess Action Two.  According to the Stipulation, the

Debtor owed EBT $1,124,427.19 as a result of nonpayment.  This is a substantial increase from

the $388,077.72 rent arrears EBT sought in Dispossess Action One.  Despite the considerable

arrearage in Dispossess Action Two, EBT agreed to let the Debtor remain in occupancy so long

as the terms of the Stipulation were met.  The terms of the Stipulation evidence that its express

purpose was to provide Debtor with an opportunity to make certain minimum payments to EBT

in exchange for EBT's forbearance of its right to evict Debtor immediately.  At paragraph nine

the Stipulation provides:

> Except for the limited restriction on Plaintiff Trust's [EBT's] rights to proceed
> with the eviction of Defendant Moomjy at this time, any and all provisions of the
> Leases, including but not limited to Defendant Moomjy's **obligations to make its**

11

**Minimum Annual Rent and the Additional Rent for the Front and Back Stores** as those terms are defined by the [Modified Lease] **remain in full force, and effect.**

(Debtor's Objection, Ex. "C," ¶ 9 DE 48-4 at 4)(emphasis added)  EBT also reserved its rights in the Stipulation to "fully, completely and strictly enforce all obligations under [the Modified Lease] and [the Stipulation]…, including the right to pursue a money judgment for all arrears due under those Agreements." (Stipulation, ¶¶ 6, 8)  Read as a whole, the Stipulation simply did not displace or otherwise modify or amend the rent terms of the Modified Lease, except to the limited extent described in the Stipulation.  Assuming, *arguendo*, that the Stipulation is a binding agreement the court concludes that under the terms of the Stipulation the Debtor's default terminated its ability to pay the lesser fixed rent of $33,725 and made the Debtor vulnerable to an eviction proceeding by EBT.  As a result, the Debtor's argument that the Stipulation precludes EBT from claiming prepetition rent calculated on the terms of the Modified Lease fails.


II.     **Postpetition Rent**

Prior to its decision in *Goody's*, the Third Circuit addressed what Congress meant in § 365(d)(3) by its requirement that a "trustee shall timely perform all of the obligations of the debtor, … arising from and after the order for relief under any unexpired lease of nonresidential real property …." 11 U.S.C. § 365(d)(3).  At issue in *Montgomery Ward* was a commercial lease under which the debtor was obligated to reimburse the landlord for real estate taxes.  Under the terms of the lease, the debtor's obligation to reimburse the landlord for taxes that accrued prepetition and postpetition came due postpetition.  After the petition date the landlord sought payment under § 365(d)(3) for taxes that accrued prepetition, but for which the debtor's obligation to reimburse the landlord came due postpetition.  268 F.3d at 207-08.  The debtor

argued that § 365(d)(3) should be construed to apply solely to taxes accrued postpetition.  That

is, the debtor "took the position that all taxes attributable to a pre-petition period constituted

unsecured claims."  *Id.* at 207.

In the factual context of the case before it, *Montgomery Ward* framed the issue as

whether § 365(d)(3) requires payment of all amounts under the lease that first became due and

enforceable after the petition date, or whether § 365(d)(3) requires a proration of the amount due

depending on whether the lease obligation becomes enforceable before or after the petition date.

*Id.* at 209.

> The Third Circuit found the answer in the statutory text, stating that
>
> We believe that to state these questions is to answer them.  The clear and express
> intent of § 365(d)(3) is to require the trustee to perform the lease in accordance
> with its terms.  To be consistent with this intent, any interpretation must look to
> the terms of the lease to determine both the nature of the "obligation" and when it
> "arises."  If one accepts this premise, it is difficult to find a textual basis for a
> proration approach.  On the other hand, an approach which calls for the trustee to
> perform obligations as they become due under the terms of the lease fits
> comfortably with the statutory text.

*Id.*  The sole focus of the decision was the proper statutory construction of § 365(d)(3), and §

503(b)(1) was not discussed.

After the *Montgomery Ward* decision some debtors in possession took the position that §

365(d)(3) was the exclusive provision applicable to obligations arising under unexpired leases.

Landlords, of course, rejected this analysis, adhering to the position that the postpetition use and

occupancy of the leasehold between the petition date and the end of the month – stub rent –

constituted an administrative expense payable under § 503(b)(1).   This conflicting view

regarding stub rent was resolved in favor of the landlords' position in *Goody's*.  In *Goody's*, the

Court specifically noted that the *Montgomery Ward* decision did not address the postpetition

obligation of a debtor "arising from actual occupancy independent of the lease."  *Goody's*, 610

13

F.3d at 817.  After examining the text and purpose of § 365(d)(3) the court in *Goody's* concluded that

> When a Debtor occupies post-petition non-residential space it leases, that § 365(d)(3) provides when the rent obligation arises does not erase when lessors may make § 503(b)(1) claims for the value conferred post-petition by that occupancy.

*Id.* at 818.

The Debtor then is plainly in error regarding whether EBT may assert a claim for stub rent.  The Debtor rightly, however, challenges whether the rent owed must be calculated based on the lease terms or whether it is limited by the requirements of § 503(b)(1) that rent be calculated based on the "actual, necessary costs and expenses of preserving the estate …." 11 U.S.C. § 503(b)(1).  Fortunately, EBT accepts the Debtor's argument that $34,000 per month is the reasonable monthly fixed rent for calculation of the Stub Rent for the Front Store.  The court agrees with EBT that thirteen (13) days of Stub Rent accrued after the Petition Date, producing the sum of $14,258 for the time period August 19, 2011 through August 31, 2011.

### III.   Administrative Expense Claim from September 1, 2011 to December 31, 2011

EBT next argues that it has an administrative claim for rent for the Debtor's postpetition use of the Front Store from September 1, 2011 to December 31, 2011.  The GOB Order provided that PFP was obligated to pay EBT rent for the Front Store in the amount of $33,700 a month, and that the amount in excess of $33,700 became the obligation of the Debtor.  Under the GOB Order, EBT expressly reserved its right to seek rent payments from the Debtor in the full amount stated in the Modified Lease.  Thus, EBT asserts an administrative expense claim for the difference between the rent set forth in the Modified Lease, which is $54,000 a month, and the rent set forth in the GOB Order, which is $33,700, amounting to a claimed total deficiency of

14

$81,200 for the period September 1 to December 31, 2011.  The Debtor rejects EBT's claim for postpetition rent in excess of $33,700 per month, arguing that the claim should be based on the market value of the Debtor's use and occupancy of the Front Store.[3]

A landlord is entitled to a claim under § 503(b)(1) for the fair rental value of its property actually used by the Debtor.  *Zagata Fabricators, Inc. v. Superior Air Products (Matter of Zagata Fabricators, Inc.)*, 893 F.2d 624, 627 (3d Cir. 1990); *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002); *In re Cornwall Papers Mills Co.*, 169 B.R. 844, 851 (Bankr. D.N.J. 1994).  Further, there is a presumption that "the rental value fixed in the lease will control, unless there is evidence that such rental rate is unreasonable."  *In re F.A. Potts & Co., Inc.*, 137 B.R. 13, 18 (E.D.Pa. 1992).  Where a debtor disputes that the benefit conferred on the estate is commensurate with the rent stated in the lease it may present evidence of a different rental value.  It has been observed that there is no per se rule that use and occupancy of a landlord's premises confers a benefit to the bankruptcy estate.  *In re Sportsman's Warehouse, Inc.*, 436 B.R. 308, 315 (Bankr. D.Del. 2009).  Rather, "the court must analyze the evidence submitted and determine, on a case by case basis, the amount of the benefit to the estate."  *Id.*

In the matter before this court, there is a need to present evidence from which a reasonable rental value can be ascertained.  EBT and the Debtor offer rent amounts that they deem to be fair, but fail to provide any facts to support their respective claims.  For example, neither EBT nor the Debtor provides any evidence of current market rents for similar commercial space in Bergen County, much less in Paramus, New Jersey.  As in *Cornwall*, the parties are directed to confer on preparation for and scheduling of a further evidentiary hearing, and thereafter request a status conference with the court.

---

[3] Debtor initially argued that the market value of fixed rent for the Front Store is $33,725 a month as indicated in the Stipulation, but Debtor subsequently clarified its position that the market value is $33,700 a month as indicated in the GOB Order.

IV.    **Surrender of the Rear Store**

The Debtor alleges that pursuant to the Stipulation and the Debtor's conduct, a surrender of the Rear Store occurred on February 28, 2011, thereby extinguishing its obligation to make rent payments. EBT denies such occurrence, relying on the terms of the Stipulation that point to the continued full force and effect of the Modified Lease. EBT contends that the Debtor merely vacated the premises. To resolve this dispute requires more facts than the parties have proffered.

"Surrender requires that the parties intend to 'relinquish [ ] the relation of landlord and tenant,' and that the parties commit an act independent of their express intent to demonstrate that the landlord and tenant relationship has concluded." *Cornwall*, 169 B.R. at 849. "If the party alleging surrender occurred carries its burden, the obligation to pay rent after surrender will not exist." *Cornwall*, 169 B.R. at 849.

The most common way to surrender property is for the tenant to abandon possession during the course of the lease "in such manner as to indicate his intent to terminate the lease" and for the landlord to take possession "in such manner as to show that he intends to reassume control for his own benefit, and not for the benefit of the outgoing tenant." *Cornwall*, 169 B.R. at 849. A tenant's abandonment alone is not sufficient to amount to a surrender by operation of law. *In re Slim Life Weight Loss Ctrs., Corp.*, 182 B.R. 701, 704 (Bankr. D.N.J. 1995). Likewise, mere repossession of the property by the landlord generally does not amount to acceptance of a tenant's surrender. *Id.*

The case law in this jurisdiction heavily relies on the particular facts of the case when determining if surrender occurred. For instance, in *Cornwall*, this court found that the debtor did not surrender the lease when it left substantial personal items at the property, forcing the landlord

16

to conduct a sale to get rid of the furnishings and equipment. *Cornwall*, 169 B.R. at 849. Further, *Cornwall* explained that changing the locks does not necessarily indicate a landlord's acceptance of the surrender. *Id.*at 850. The court reasoned that since the landlord (1) provided new keys to an agent of the debtor, (2) allowed the debtor access to the property to remove its property, and (3) persistently requested the debtor to address its use and occupancy of the premises, the landlord did not accept the surrender. *Id.*

Here, there are inconclusive facts presented by the parties. Both parties agree that pursuant to the terms of the Stipulation, the Debtor completely vacated the store by February 28, 2011. According to the Moomjy Certification, EBT also banned the Debtor from selling any merchandise from the Rear Store after January 15, 2011. EBT additionally advised Debtor that Ms. Butler would monitor the Debtor's progress regarding vacating the Rear Store on a daily basis for the period from January 12, 2011 to January 31, 2011. The Stipulation also indicates that the Debtor was to pay the utilities and fire protection on the Rear Store during its occupancy through February 28, 2011. The Debtor gave EBT the keys to the Rear Store, and EBT changed the locks on February 28, 2011. These facts are suggestive of surrender. The Modified Lease, however, contains a provision that permits EBT to relet the Front and Rear Store for the benefit of the Debtor. EBT's position that no surrender occurred is consistent with this lease provision. The court also does not have any factual representations from an EBT representative. Unfortunately, EBT did not submit a certification regarding its acceptance or rejection of the Debtor's alleged surrender of the Rear Store or more generally the negotiation process leading up to the drafting of the Stipulation. The court had only the terms of the Stipulation and the Moomjy Certification to review to determine if a surrender was effectuated. These documents are simply insufficient evidence of EBT's acceptance of the Debtor's surrender.

17

As noted *supra*, the Stipulation altered the terms of the Modified Lease only with respect to the Debtor's rent obligation and only temporarily. The Stipulation was clear that the alteration was in exchange for EBT's promise not to pursue eviction proceedings but that ultimately the Modified Lease remained in full force and effect. The Stipulation does not indicate whether the Modified Lease's terms with respect to the Rear Store were terminated. At present, the court does not have enough information to determine if EBT accepted the Debtor's abandonment of the Rear Store.

**CONCLUSION**

As set forth above, the Debtor has not adequately demonstrated that EBT's proof of claim should be modified.

Dated: July 13, 2012                                  ____/S/_____

                                                                  NOVALYN L. WINFIELD
                                                                  United States Bankruptcy Judge